# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

MICHELE A. HERRMANN,        )
                              )
       Plaintiff,         )
                              )
v.                            )     Case No. 1:17-CV-56
                              )
NANCY A. BERRYHILL, Acting    )
Commissioner of Social Security,   )
                              )
       Defendant.      )

## OPINION AND ORDER

This matter is before the Court on the Defendant's "Motion for Reversal with Remand for Further Administrative Proceedings and Development Under Sentence Four of 42 U.S.C. § 405(g)," filed on October 17, 2017 (ECF 20). Plaintiff Michelle A. Herrmann filed a response in opposition on October 26, 2017 (ECF 21). The Commissioner chose not to file a reply brief and so the motion is ripe for resolution. Also before the Court is Herrmann's opening "merits" brief, filed pursuant to Local Rule 7-3(b) on July 11, 2017 (ECF 15). The Commissioner chose to file the motion for remand in lieu of a response to the merits brief. For the reasons discussed below, the decision of the Commissioner is REVERSED and the Court REMANDS this case to the Social Security Administration for an award of disability benefits to the Plaintiff for the period from June 9, 2003, to September 6, 2010.

## PROCEDURAL BACKGROUND

The process of obtaining Social Security benefits can take years, given the agency level administrative procedures and subsequent federal court litigation that many cases, like this one, go through before they are resolved. A few examples from recent social security cases filed in

this district illustrate this. *See Keys v. Berryhill*, 679 F.App'x 477, 478 (7th Cir. 2017) (claimant/plaintiff applied for benefits in December 2011; decision by ALJ denying benefits on April 22, 2013; complaint filed on August 15, 2014; decision by this Court on February 5, 2016, affirming ALJ's denial of benefits; affirmed by Seventh Circuit on February 9, 2017); *Parker v. Colvin*, 660 F.App'x 478, 479 (7th Cir. 2016) (claimant/plaintiff applied for benefits in May 2012; decision by ALJ denying benefits on August 15, 2013; complaint filed on January 10, 2014; decision by this Court on November 5, 2015, affirming ALJ's denial of benefits; affirmed by Seventh Circuit on October 20, 2016); *Reed v. Colvin*, 656 F.App'x 781, 782 (7th Cir. 2016) (claimant/plaintiff applied for benefits in June 2011; decision by ALJ denying benefits on January 10, 2013; complaint filed on March 14, 2014; decision by this Court on August 18, 2015, affirming ALJ's denial of benefits; affirmed by Seventh Circuit on August 16, 2016).

The present case has been winding its way laboriously through the system much longer than most–about 10 years longer. Michele Herrmann filed her application for Supplemental Security Income on June 9, 2003, alleging a disability onset date of January 1, 1980. Administrative Record Transcript ("Tr.") (ECF 10), p. 31.[1] Herrmann's application was rejected initially, after reconsideration, and in a decision issued by Administrative Law Judge Bryan Bernstein on March 27, 2007. Tr., pp. 31-40. Herrmann requested review by the Appeals Council but was denied on August 7, 2007 (Tr., p. 14), at which point the ALJ's decision became the final decision of the Commissioner. Herrmann filed a complaint in this Court on October 12, 2007, in case number 1:07-CV-255. Tr., p. 392. United States Magistrate Judge Roger B. Cosbey

---

[1] The page numbers of the transcript (and the pleadings) cited by the Court are those assigned by the Court's electronic court filing (ECF) system (in the upper right corner of each page) and may not coincide with the page numbers on the original documents.

issued an opinion on August 8, 2008, reversing ALJ Bernstein's decision (Tr., pp. 391-413) and

the Appeals Council remanded the matter to the ALJ. Tr., pp. 387-88. ALJ Bernstein conducted a

second hearing and again denied Herrmann's application in a decision issued on January 26,

2011. Tr., pp. 337-50. Herrmann again requested review by the Appeals Council, which this time

issued a partially favorable decision on May 9, 2012, finding that Herrmann became disabled as

of September 6, 2010, and was entitled to benefits as of that date. Tr., pp. 326-29. The Appeals

Council, however, upheld the ALJ's determination that Herrmann was *not* disabled between the

filing date and September 6, 2010. *Id*. It is that period–from June 9, 2003, through September 6,

2010–that is in dispute now. Herrmann continues to insist that she was disabled during that

period and therefore entitled to benefits. Herrmann filed a second complaint in this Court on July

6, 2012, in cause number 1:12-CV-229. Tr., p. 706. United States Magistrate Judge John E.

Martin affirmed the Commissioner's decision on September 24, 2013. Tr., p. 710. Herrmann

appealed that judgment to the Seventh Circuit, which issued an opinion on December 4, 2014,

reversing the Magistrate's decision. Tr., pp. 697-705. Magistrate Judge Martin remanded the

matter to the Commissioner for further proceedings in light of the Seventh Circuit's decision. Tr.,

p. 711. Following a third hearing, ALJ Stephanie Katich once again concluded that Herrmann

was not disabled during the period in question and entered a decision on October 13, 2016,

explaining her reasoning. Tr., pp. 648-68. Herrmann did not file exceptions with the Appeals

Council and the Appeals Council did not take jurisdiction of the claim. Thus, ALJ Katich's

decision became the (most recent) final decision of the Commissioner. Herrmann then filed this

case on February 10, 2017 (ECF 1). In compliance with this district's Local Rule 7-3, Herrmann

filed her opening brief in support of her Complaint on July 11, 2017, asking this Court to

"reverse the decision of the ALJ and remand this matter for an award of benefits, or, in the alternative, reverse the ALJ's decision and remand for further proceedings[.]" Plaintiff's Merits Brief (ECF 15), p. 26.

The Commissioner responded by filing the pending motion to remand in lieu of a typical response brief, arguing that "[r]emand is warranted because the ALJ failed to properly evaluate part of the opinion of consultative examiner Michael E. Holton, M.D. . . . contrary to the Seventh Circuit's decision remanding the case in December 2014. . . . Accordingly, the Defendant moves this court to remand this case to SSA for a new hearing and decision pursuant to the fourth sentence of 42 U.S.C. § 405(g), which provides that this 'court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" Defendant's Motion for Remand, p. 1. The Commissioner states that "[s]pecifically, this Court should order that, on remand, the Commissioner: 1) will conduct further administrative proceedings; 2) give consideration to the opinion of consultative examiner Holton, and explain the weight assigned to such; 3) and [sic] issue a new decision." *Id.*, pp. 1-2. The Commissioner acknowledges that "Plaintiff's counsel . . . indicated he did not consent to a remand motion with this language." *Id.*, p. 2. That is because Herrmann contends "the appropriate remedy is an award of benefits to Ms. Herrmann, for the period at issue–June 2003 through September 6, 2010." Plaintiff's Response, p. 1. Furthermore, argues Herrmann, "[t]he Commissioner failed to address numerous errors in the ALJ's decision which Plaintiff discussed at length in her opening merits brief. By filing this motion for remand, following Plaintiff having filed a 25 page detailed brief, asserting numerous errors in the ALJ's decision, the Commissioner

4

has put the case in a procedurally awkward position. The lack of response to an argument creates a negative inference, waiving defense of the issue. . . . Thus, if the Court does not find remand for an award of benefits to be the appropriate remedy in this matter, the Court should remand on each issue raised by Plaintiff in her opening merits brief, because the Commissioner has waived a defense to any and all issues raised by Plaintiff." *Id.*, p. 2. In her opening brief, Herrmann contends that 1) the ALJ erred by not giving proper weight to, and by improperly assessing, the medical opinions of her treating physician, Dr. Bauscher, as well as consultative examining physicians, Drs. Holton, Bacchus, and Ksionski; 2) that the ALJ erred when calculating her residual functional capacity; 3) that the ALJ erred in assessing Herrmann's testimony regarding the severity of her impairments; and 4) that the ALJ erred by relying on the testimony of a vocational expert. Plaintiff's Merits Brief, pp. 15-25. Herrmann contends that for all these reasons "the Court [should] reverse the decision of the ALJ and remand this matter for an award of benefits, or, in the alternative, reverse the ALJ's decision and remand for further proceedings consistent with the argument set forth above." *Id.*, p. 26.

So, Herrmann wants the Court to remand for the granting of benefits or, in the alternative, issue a remand order that protects her ability to raise before the ALJ all the arguments she presents in her merits brief. The Commissioner seeks remand on a much more limited scope.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of a final decision denying benefits, but also provides that an ALJ's findings must be accepted as conclusive if supported by substantial evidence. *Visinaiz v. Berryhill*, 243 F.Supp.3d 1008, 1011 (N.D. Ind. 2017). "Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by

substantial evidence or if the ALJ has applied an erroneous legal standard." *Id*. (citing *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005)). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted).

The district court "reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Id*. (citing *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999)). The question on judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "'uses the correct legal standards and the decision is supported by substantial evidence.'" *Id*. at 1011-12 (quoting *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) and citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "'[I]f the Commissioner commits an error of law,' the Court may reverse the decision 'without regard to the volume of evidence in support of the factual findings.'" *Id*. at 1012 (quoting *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999)). Put another way, this Court must review an ALJ's findings and conclusions to ensure that they are not contrary to applicable law and that the ALJ adequately explains his or her reasoning for those conclusions. As Magistrate Judge Martin explained in *Visinaiz*:

> At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d

589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

*Id*. This case presents an added dimension in that the Court must apply the established standard of review against the backdrop of the Seventh Circuit's decision remanding the case.

## DISCUSSION

Herrmann is correct that this case is "in a procedurally awkward position." An ALJ issues a decision that is favorable to the Commissioner; the claimant files suit in federal court challenging that decision; the Commissioner, rather than defend that favorable decision by filing a response to the claimant's merits brief, seeks remand on the basis that the decision failed in some unspecified way to comply with the Seventh Circuit's decision reversing the *previous* ALJ's decision. Adding another wrinkle to this case, as Herrmann points out, is that the Commissioner's decision to forgo filing a response to Herrmann's merits brief gives rise to waiver issues (as discussed below). But while the case is certainly in a quirky posture, the path to resolving it is clear and starts with the Seventh Circuit's decision in *Herrmann v. Colvin*, 772 F.3d 1110 (7th Cir. 2014).

The appellate court reversed ALJ Bernstein's decision (and Magistrate Judge Martin's decision affirming it) for several reasons, of which the issue of Dr. Holton's opinion was one. Beginning there, the Seventh Circuit noted that the ALJ "discussed at great[] length the evidence

of Dr. Michael Holton," but concluded that the ALJ's explanation of his assessment of Dr. Holton's opinion–that is, his decision to give it no weight–was "garbled." *Herrmann*, 772 F.3d at 1112. The appellate court concluded that "[t]he district court's statement that 'the ALJ's evaluation of Dr. Holton's opinion may not be perfect' is a considerable understatement. Coupled with the administrative law judge's unreasoned brush off of the evidence offered by the other consulting physicians, his confused rejection of Dr. Holton's evidence should have persuaded the [magistrate] judge to reverse the denial of relief to [Herrmann] and remand the matter to the Social Security Administration." *Id.*

So, this peripatetic case went back to the SSA and landed with ALJ Katich, who reviewed the case yet again, conducted another hearing, and concluded that "the undersigned largely agrees with the findings of the prior Administrative Law Judge, whose opinion has since been vacated. There is little basis in the objective medical evidence for the severity and frequency of symptoms alleged by the claimant. While the physical examinations from 2003 through June 2010 revealed some abnormalities, they were neither persistent nor preclusive of all work activity[.]" ALJ Katich Decision, Tr., p. 666.

Herrmann filed the present case to challenge this conclusion for the reasons set out in her merits brief. The Commissioner also wants the case remanded, but for only one reason–so an ALJ can "give consideration to the opinion of consultative examiner [Dr. Michael] Holton, and explain the weight assigned to such[.]" Motion for Remand, p. 2. The Commissioner states that since "[t]he Seventh Circuit, considering Dr. Holton's opinion, did not find reversal for payment to be the appropriate remedy . . . [i]t is still not the appropriate remedy." *Id.* The Commissioner contends that since the Seventh Circuit remanded the case for further proceedings rather than

reverse for an award benefits, this Court should likewise deny Herrmann's request for benefits and remand the case so yet another ALJ can take a stab at assessing Dr. Holton's opinion and explaining–finally and properly, in keeping with the Seventh Circuit's decision–why it should be credited or not credited.

The Commissioner claims that ALJ Katich failed to apply the Seventh Circuit's decision when she reheard the case, specifically with regard to Dr. Holton's opinion. The Commissioner is silent though–completely silent–with regard to *how* ALJ Katich erred or *why* her decision is flawed. As Herrmann puts it, "the Commissioner does not include any specific reasons the ALJ should reconsider Dr. Holton's opinion, explain which portion(s) of the opinion the ALJ did not properly consider, or explain any particular error in the ALJ's prior consideration of the opinion. As this case has been pending with the Agency for 14 years, such a generic remand is hardly appropriate." Plaintiff's Response, p. 1. The Commissioner wants a remand and wants an ALJ to "issue a new decision." *Id*., p. 2. But for what reason and to what end? The Commissioner's argument is nothing more than a request for a remedy–remand and a new decision–but she fails to identify a single issue with ALJ Katich's decision that allegedly requires further administrative review. Instead, the Commissioner bases her request on the unadorned conclusion that Judge Katich failed to heed the decision of the appellate court, without bothering to explain how she failed to do that.

Notwithstanding the Commissioner's failure to present a developed argument in support of remand, the Court cannot resolve this case now *without* determining whether ALJ Katich's decision corrects or avoids the problems identified in the Seventh Circuit's December 4, 2014, decision. In other words, even though the Commissioner fails to explain how ALJ Katich's

decision runs afoul of the Seventh Circuit's decision, this Court has to review her decision in light of that opinion anyway. So in essence the Commissioner wins a battle here–the case must be remanded because the ALJ's decision is flawed, in part due to her incorrect assessment of Dr. Holton's opinion as the Commissioner contends–but loses the war because the Court concludes that remand for an award of benefits is the proper resolution for several reasons in *addition* to the issue of Dr. Holton's opinion.

**I. *Herrmann v. Colvin*, 772 F.3d 1110 (7th Cir. 2014).**

The Seventh Circuit began by noting that Herrmann's application for benefits "was turned down by an administrative law judge of the Social Security Administration for the benefit she sought for years before she turned 55. But because of the less demanding showing of disability required of applicants that age and older, she was deemed to have become disabled when she reached 55." *Herrmann*, 772 F.3d at 1110. Next, addressing the period from June 2003 to September 2010, the Seventh Circuit summarized the medical evidence as follows:

> The applicant's treating physicians, together with three consultative physicians selected by the Social Security Administration who examined the applicant and studied her medical records, advised the administrative law judge that she suffers from fibromyalgia, spinal disk disease, "photophobia" (abnormal sensitivity to light), and other ailments unnecessary to discuss, and that as a result she walks haltingly, has difficulty gripping objects, experiences difficulty in rising from a sitting position, has trouble concentrating in a bright room or when looking at a computer screen, and as a result of this assemblage of impairments cannot do even light work on a full-time basis. If this is right she was disabled before she turned 55 and is therefore entitled to a back payment of Supplemental Security Income.

*Id*. at 1111. That last sentence states the issue in this case: if substantial evidence supports the summary of impairments, then Herrmann should be awarded benefits beyond what she has received.

The Seventh Circuit was displeased with ALJ Bernstein's decision because the Court felt that he botched the assessment of physicians' opinions (not just Dr. Holton's) and gave weight to unreliable statistical evidence presented by a vocational expert. As to the first issue, the appellate court concluded that "the [ALJ] brushed aside the physicians' findings. Typical was his statement that the opinion of Dr. Dauscher, one of the applicant's treating physicians, would be 'given no significant weight, because the functional limitations are not supported by Dr. Dauscher's sparse treatment statement notes or by examination findings made by other physicians.' The [ALJ] seems to have thought that a physician's evidence can be disregarded unless he has detailed notes to back it up and other physicians can provide identical evidence even if they don't contradict him–in other words no credibility without corroboration. *These are insufficient grounds for disbelieving the evidence of a qualified professional*." *Id*. (italics added). The Court held that even though ALJ Bernstein "discussed at greatest length the evidence of Dr. Michael Holton," . . . his findings and conclusions regarding that evidence were "garbled" and "confused." *Id*. at 1112. In other words, ALJ Bernstein's decision failed to provide a "'logical bridge' between the evidence and his conclusions[,]" *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010), so the case had to be remanded.

The Seventh Circuit also found that "[t]here is more wrong with [ALJ Bernstein's] opinion. The more involves an issue we discussed in *Browning v. Colvin*, 766 F.3d 702, 708-12 (7th Cir. 2014), concerning testimony by vocational experts regarding the number of jobs in the local, state, and national economy that an applicant for social security benefits is capable of performing." *Id*. The appellate court expressed concerns about the reliability of the testimony of the vocational expert in this case. The Seventh Circuit's criticism of VE testimony is not limited

to this case and some other circuits share the concern. *Id*. at 1113 ("[w]e are not alone in harboring such doubts.") (citing *Brault v. Social Security Administration*, 683 F.3d 443, 446-47 (2d Cir. 2012) ("we agree with the Seventh Circuit that evidence cannot be substantial if it is 'conjured out of whole cloth.'") (quoting Donahue, 279 F.3d at 446)); *Guiton v. Colvin* 546 F.App'x 137, 143-45 (4th Cir. 2013) (questioning reliability of VE testimony). The Seventh Circuit pointed out that the statistics relied on by VEs are based, at least in large part, on "the *Dictionary of Occupational Titles* (4th ed. 1991) (the *'DOT'* as it is called)[,]" which the court concluded is "an obsolete catalog of jobs (most of the entries in it date back to 1977) but it contains no statistics regarding the number of jobs in a given job category that exist in the local, state, or national economy." *Id*. To arrive at those numbers, vocational experts use additional data, such as census data, and then arrive at an estimate of the number of jobs in the local and national economy that an applicant could perform–a process the Seventh Circuit believes "would be an arbitrary estimate[.]" *Id*. at 1114. As the court put it, "[i]f the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist), the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs." *Id*. at 1113. More specific to this case, according to the Seventh Circuit, was that "[w]e do not know how the vocational expert in this case calculated the numbers to which he testified. Nothing in the record enables us to verify those numbers, which the administrative law judge accepted." *Id*. at 1114.

For those reasons the Seventh Circuit remanded this case and the unenviable task of hearing the matter all over again fell to ALJ Katich. This Court must determine whether Judge

Katich's decision is "supported by substantial evidence or if the ALJ has applied an erroneous legal standard." *Visinaiz v. Berryhill*, 243 F.Supp.3d at 1011 (citing *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005)). In this case that determination turns mostly on whether ALJ Katich addressed the issues identified by the appellate court.

**II. ALJ decision of October 13, 2016 (Tr., pp. 648-68).**

It is curious and rather disappointing that while ALJ Katich discussed Dr. Holton's opinion in her decision, and also relied on statistical vocational evidence, her only mention of the Seventh Circuit's decision is her statement that ALJ Bernstein's prior decision "has since been vacated." She didn't even cite the case, let alone discuss it or indicate whether–and if so how–it affected her review. Let's be frank here–the Seventh Circuit thought that ALJ Bernstein's decision stunk, but ALJ Katich concluded after reviewing this case that she "largely agrees with the findings" contained in Bernstein's decision. If her assessment of the evidence was proper and her reasoning supported by substantial evidence then her decision would have to be affirmed, even if it might seem counterintuitive that her determination could be based on the fact that she "largely agrees with the findings" of a decision that the Seventh Circuit concluded was fundamentally flawed. Put another way, if ALJ Katich applied the proper legal standards to her review of the evidence and if her conclusions are supported by substantial evidence, then her decision should be affirmed even though her ultimate determination–that Herrmann was not disabled during the period of time in question–is the same as ALJ Bernstein's. The Court agrees with Herrmann, however, that the ALJ's decision is inconsistent with the Seventh Circuit's decision. And, given that the Commissioner has waived any arguments that she could have raised in response to the arguments presented by Herrmann in her merits brief, remand for an award of

benefits is warranted.

After she reviewed the record and conducted a hearing, the ALJ made the following relevant findings and conclusions:

1) Herrmann "had the following severe impairments: fibromyalgia . . . and degenerative disc disease of the thoracic and lumbar spines[.]" Tr., p. 651;

2) Herrmann "had the residual functional capacity to perform less than the full range of light work . . . except that she could not stand and/or walk for four hours during and eight-hour workday and for thirty minutes at one time, she could occasionally balance, stoop, kneel, crouch and crawl, and she could perform work activity that was free from a rapid pace or a production rate pace." Tr., p. 658;

3) "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exists in significant numbers in the national economy that the claimant can perform[.]" Tr., p. 667; and

4) Herrmann "has not been under a disability, as defined in the Social Security Act, since June 9, 2003, the date the application was filed[.]" (*Id*.).

ALJ Katich determined that "[t]here is little basis in the objective medical evidence for the severity and frequency in symptoms alleged by the claimant." Tr., p. 666. In short, the ALJ concluded that the objective medical evidence did not support a finding of total disability during the period at issue and that Herrmann's subjective testimony was not entirely credible.

ALJ Katich also found, based on the testimony of a vocational expert, that jobs Herrmann *could* perform existed in sufficient numbers in the national economy. On this issue the ALJ concluded as follows:

The vocational expert testified that given all of [Herrmann's impairments she] would have been able to perform the requirements of representative occupations such as an office helper (DOT 239.567-010) (approximately 117,000 jobs in the United States). He identified other representative jobs as a mail sorter (DOT 209.687-026) (approximately 72,000 jobs nationwide) and a parking lot attendant (DOT 915.473-010) (approximately 69,000 jobs nationally). . . . [T]he undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

Tr., pp. 667-68. ALJ Katich did not discuss or even mention the portion of the Seventh Circuit's decision that questioned the reliability of this sort of expert evidence. She did not explain why she relied on the vocational evidence, just that it was consistent with the *DOT* and therefore jobs existed that Herrmann was capable of performing. It would have been helpful if the ALJ had elaborated on this issue (the language quoted above constitutes the entirety of her discussion of the matter) and explained why she found this testimony to be "adequate and reliable" in light of the Seventh Circuit's scathing criticism of such evidence. At the same time, the Court acknowledges that this issue about the reliability of VE testimony–specifically as to statistical evidence–is a tough nut to crack and has even divided the federal circuits.[2] One district court

---

[2] *See, e.g., Rivera v. Berryhill*, 242 F.Supp.3d 1226, 1240-42 (D.N.M. 2017) ("In support of his position that the VE's reduction of the number of jobs available to him was speculative, Plaintiff relies upon cases from the Seventh Circuit which are highly critical of VE testimony. *See . . . Herrmann v. Colvin*, 772 F.3d 1110 (7th Cir. 2014); *Alaura v. Colvin*, 797 F.3d 503 (7th Cir. 2015); *Browning v. Colvin*, 766 F.3d 702 (7th Cir. 2014); and *Hill v. Colvin*, 807 F.3d 862 (7th Cir. 2015). . . . While the Court takes note of the lack of confidence expressed by the Seventh Circuit towards VEs and the testimony they offer, . . . the Tenth Circuit has accepted without reservation VE testimony concerning the number, percentage and location of jobs within a claimant's capacity.").

addressed this issue and concluded that "[t]he *Herrmann* court stated that the *DOT* was 'an obsolete catalog of jobs' with most of its entries dating back to 1977. . . . While of course the Court duly notes this observation, the fact is that language was dicta. Therefore this passing observation is not a basis for remand." *Allen v. Colvin*, 2015 WL 7272229, at *4 (S.D. Ind. Nov. 16, 2015). Another court likewise refused to reverse an ALJ on the claimant's contention that the ALJ relied on flawed statistical evidence in contravention of *Herrmann*. In *March v. Colvin*, 2015 WL 12683829, at *3 (C.D. Ill. Aug. 3, 2015), the court held that "[w]hile the Seventh Circuit [in *Herrmann*] cast doubt on the VE's reliance on the *DOT*, it reversed and remanded the case on different grounds and did not find that reliance on the *DOT* for calculating job numbers is a reversible error on its own."). Those statements are correct as far as they go, but the Seventh Circuit has said much more about this issue than what it said in *Herrmann*. Most notably, the appellate court has explained that "[a] finding of an ALJ based on unreliable VE testimony *is equivalent to a finding that is not supported by substantial evidence* and must be vacated." *Overman v. Astrue*, 546 F.3d 456, (7th Cir. 2008) (quoting *Britton v. Astrue*, 521 F.3d 799, 803 7th Cir. 2008) (italics added)). Although a VE is entitled to rely on various methods and sources of data, the foundation for the VE's opinions must be adequate and the VE's testimony must be reliable. *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). The Seventh Circuit has recognized that "the standards by which an expert's reliability is measured may be less stringent at an administrative hearing than under the Federal Rules of Evidence, [but] because an ALJ's findings must be supported by substantial evidence, an ALJ may depend upon expert testimony only if the testimony is reliable." *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004) (citing *Donahue*, 279 F.3d at 446). "Evidence is not 'substantial' if vital testimony has been

conjured out of whole cloth." *Id.* (quoting *Donahue*, 279 F.3d at 446). "A vocational expert is 'free to give a bottom line,' but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *Id.* (quoting *Donahue*, 279 F.3d at 446). "If the basis of the vocational expert's conclusions is questioned . . . then the ALJ should make an inquiry . . . to find out whether the purported expert's conclusions are reliable." *Donahue*, 279 F.3d at 446 (italics omitted). In *Gracz v. Berryhill*, the district court, relying on *Donahue* and *McKinnie*, concluded that "remand was necessary because the VE failed to provide underlying data when the claimant challenged the foundation of the vocational expert's opinions as to job availability." *Gracz v. Berryhill*, 2017 WL 1344532, at * 4 (N.D. Ill. April 12, 2017). In summary, the law in the Seventh Circuit is clear–an ALJ must articulate why she relied on a VE's testimony, meaning she must articulate how it was "adequate and reliable."

This Court concludes that ALJ Katich's decision is not supported by substantial evidence and conflicts with the Seventh Circuit's decision. Her findings and conclusions regarding the medical evidence, as she readily admits, essentially mirror (if not adopt) Bernstein's. Her explanation for those conclusions, though, is unconvincing–especially in light of *Herrmann*. Likewise, and also in contravention of *Herrmann*, the ALJ failed to articulate her reasons for accepting the VE's testimony in this case.

### A. Medical evidence and physicians' opinions.

When she reviewed Dr. Holton's opinion–the one on which the Commissioner bases her motion for remand–ALJ Katich acknowledged that Dr. Holton, in his November 2008 medical source statement, concluded "that it was unlikely [Herrmann] could work an eight-hour day even

with medications. More specifically, he stated the claimant could not sit or stand more than twenty minutes or walk for longer than five minutes." Tr., p. 665. Katich rejected Dr. Holton's professional opinion, though, because she believed it was "based on the claimant's statements during the interview portion of the examination wherein she stated she could sit or stand about ten to twenty minutes and perhaps walk one-half block; at the very least it is not consistent with the lack of any significant clinical findings. *Id*. The "lack of any significant clinical findings" that the ALJ refers to means the records from an examination of Herrmann by Dr. Charles Coates in June of 2008. *Id*. The ALJ writes that "Dr. Coates' June 2008 exam showed the claimant to have normal gait and station. She did not appear in any distress due to pain and presented as pleasant with good attention to her hygiene. Inspection of her bones, joints, and muscles was unremarkable. Her coordination was good . . . . Dr. Coates' June 2008 examination findings are notable given the November 2008 medical source statement by Dr. Michael Holton that it was unlikely the claimant could sit or stand more than twenty minutes or walk for longer than five minutes." *Id*. Thus, Katich gave little to no weight to Dr. Holton's opinion because she found it to be inconsistent with Dr. Coates' "unremarkable" assessment of Herrmann's "bones, joints, and muscles" several months earlier, and also because she believed that Dr. Holton, in arriving at his professional opinion, relied too heavily on his patient's subjective complaints. This second point–that a doctor's opinion is not entitled to much or any weight because the doctor was fooled by Herrmann's subjective complaints regarding the severity of her impairments–is a favorite theme in the ALJ's decision. For example, in a section of her decision addressing the issue of Herrmann's alleged photophobia, ALJ Katich acknowledged that Herrmann's optometrist, Dr. Richard Windsor "diagnosed the claimant as having severe photophobia and that over time his

18

records reflect increasing complaints of such by the claimant. However, despite repeat examinations, there were no objective findings to explain the claimant's complaints and only speculations as to what might be the cause, i.e., fibromyalgia, migraine headaches, conversion disorder. Despite [no] clear etiology for the claimant's complaints, Dr. Windsor opined that because of her vision problems it was difficult for her to concentrate and function in a day to day work environment." Tr., p. 653. The ALJ believed that "Dr. Windsor's opinion . . . appears to be largely based on the claimant's self reports. Further, the opinions appear to have been requested to bolster the claimant's case for disability, rather than based on treatment of the claimant." *Id*. So again the ALJ rejected a physician's diagnosis on the basis that it was not credible since it was based on Herrmann's subjective complaints, which were themselves not credible.

The ALJ's fixation with the idea that several physicians in this case were fooled into accommodating Herrmann by basing their medical opinions on her allegedly exaggerated complaints wasn't limited to Drs. Holton and Windsor. The ALJ rejected the opinion of consultative examining physician Sebastian Ksionski for the same reason. The ALJ conceded that "Dr. Ksionski observed the claimant to 'far' reach at objects, to be unable to do fine finger maneuvers, and almost fall off the examination table due to misinterpreting the distance. He indicated this was indicative of coordination and neuromuscular issues with regard to visualized objects. He opined the claimant's daily functioning was limited given her neuromuscular compromise and fibromyalgia[.]" Tr., p. 652. The ALJ also noted that "[t]he above examination findings by Dr. Ksionski are suggestive of visual difficulties." *Id*. But she nonetheless rejected Dr. Ksionski's opinion for the stunning reason that another doctor, "Dr. J. Sands, a State agency medical consultant, who evaluated the claimant's case . . . noted that Dr. Ksionski did not

recognize the likelihood that the claimant was magnifying her symptoms and that he interpreted her subjective presentation as objective manifestations of disease[.]" *Id*. This is incredible. The ALJ rejected an examining physician's opinion because another (non-examining) physician opined that the first physician was likely hoodwinked by his patient! But wait, it goes on! The same applied to the opinion of consultative examining physician H.M. Bacchus. ALJ Katich first acknowledged that "it could [be] argued that the medical source statement from Dr. H.M. Bacchus, who performed a consultative examination of the claimant in August 2003, is consistent with [treating physician Dr. Daniel] Dauscher's opinions," but then she rejected Dr. Bacchus' opinion because "[t]he lack of objective clinical findings on exam suggests that Dr. Bacchus' opinion may have been more influenced by the claimant's subjective complaints than his own objective examination findings." Tr., p. 660. In short, ALJ Katich gave little or no weight to the opinions of physicians who concluded that Herrmann suffers from a host of impairments because all of those doctors were either naive or overly solicitous of Herrmann's effort to obtain benefits.

In *Herrmann*, the Seventh Circuit held that ALJ Bernstein erred by failing to give proper weight to physicians' opinions on the basis that those opinions lacked "credibility without corroboration." The appellate court held that "[t]hese are insufficient grounds for disbelieving the evidence of a qualified professional." Similarly now, ALJ Katich's reason for rejecting many of the physicians' opinions in this case–i.e., that Herrmann's lack of credibility renders those doctors' opinions unreliable–is an insufficient basis for rejecting those professional opinions. ALJs are duty bound to make credibility determinations, but what the ALJ did here was apply a credibility determination–that is, her belief that Herrmann's subjective complaints were

exaggerated–across the board, as it were, and use it as a reason for giving little or no weight to certain doctors' opinions and statements. This is just one example of how the ALJ ignored or cast aside a blanket of substantive evidence in this case, focusing instead on picking at loose threads.[3]

Also troubling in light of the Seventh Circuit's decision is ALJ Katich's conclusion to give no weight to treating physician Dr. Dauscher's statements in "disability paperwork" he completed "for the township trustee's office at the claimant's request in December 2003[,]" in which he "reported [that Herrmann] was unable to work due to debilitating fibromyalgia, [and] regular employment was not feasible," because those medical statements "are not consistent with his own treatment records" and "there is very little by way of his chart notes to document these conditions or disabling limitations due to them." Tr., p. 660. According to the Seventh Circuit, Bernstein made the same error in reasoning when he rejected Dr. Dauscher's opinion on the basis that it was "'not supported by Dr. Dauscher's sparse treatment statement notes or by examination findings made by other physicians.'" *Herrmann*, 772 F.3d at 1111. ALJ Katich repeated this error by applying a "no credibility without corroboration" standard to reject Dr. Dauscher's opinions.

Another example of an "unreasoned brush off" of the evidence is the ALJ's conclusion that Herrmann's fibromyalgia was not disabling because of her "limited treatment for fibromyalgia." Tr., p. 663. The evidence, though, shows that Herrmann complained of and was treated for symptoms of fibromyalgia over the course of many years. As the ALJ notes, "[t]he

_____

[3] Perhaps "ignored" is too strong a word. ALJs Bernstein and Katich tried to wade their way through the morass of evidence and issues in this case, which of course spans many years, and determine, as best they could, what it all adds up to. That they had difficulty doing so is no surprise given that two ALJs (on three separate reviews), two federal magistrates, the Seventh Circuit, and now this district court have all taken a crack at trying to sort through and resolve this case.

claimant testified that during the relevant period from June 9, 2003 through September 6, 2010, her most significant health problem was fibromyalgia, which she described as devastating. She elaborated that due to this condition she suffered from crushing wide spread body pain, muscle spasms and rigidity, cramping/Charlie horses, and fatigue[.]" Tr., pp. 658-59. As to the ALJ's finding that Herrmann received only "limited treatment" for this condition, and therefore it did not rise to the level of disabling, that finding is belied by the facts recited in the decision. In her decision the ALJ notes the following:

1) Herrmann was examined by "rheumatologist Steven Behrendsen in July 2001," and "told him she felt she was disabled and unable to work and reported numerous symptoms including, but not limited to, total body pain, low back pain, shoulder pain, crampy [sic] calf pain, right leg weakness, and muscle pulling and cramping. . . . Dr. Behrendsen assessed the tender points were consistent with fibromyalgia, and advised the claimant that Dr. Dauscher could increase her dose of flexeril and try treating her with ultram." Tr., p. 659.

2) Treating physician Dr. Mark Zolman examined Ms. Herrmann at the request of Dr. Dauscher on September 9, 2004. Dr. Zolman diagnosed fibromyalgia and possible lumbar radiculopathies, recommended continued treatment with medication, and opined that Herrmann might benefit from "formal physical therapy here at Fort Wayne Orthopaedics." Zolman Opinion, Tr., pp. 190-92.

3) "Thereafter, Dr. Dauscher prescribed flexeril for the claimant's fibromyalgia[.]" *Id.*

4) Herrmann treated with Dr. Dauscher during the period from July 2005 through April 2007, visiting his office about a half dozen times, "and received prescriptions for Tylenol # 3, flexeril, and midrin once again." Tr., p. 662.

5) In January 2007, "Dr. Dauscher prescribed lyrica for the claimant's fibromyalgia." *Id*.

6) Beginning in June 2008, Herrmann "went to Dr. Charles Coates as a new patient . . . [and] was still taking Tylenol with codeine and flexeril[.] A November 2008 treatment record from Dr. Coates indicates the claimant was still taking these medications." Dr. Coates also gave Herrmann a prescription for Vicodin. Tr., p. 664.

7) Herrmann treated with "Dr. Daniel Roth at the Centers for Pain Relief in January 2010. She complained of all over body pain of seven out [of] ten severity that at times was as severe as ten out of ten. . . . Dr. Roth prescribed Percocet, flexeril, klonopin, trazodone and Cymbalta and recommended treatment with an epidural steroid injection." Tr., p. 666.

Despite a documented history of treatment for symptoms of fibromyalgia stretching over many years, the ALJ thought it wasn't enough. The ALJ attempted to support her conclusion that Herrmann's treatment for fibromyalgia was "limited" by observing that "[o]ther than continuing to take flexeril there is no indication of any specific follow through with recommended treatment for fibromyalgia, *i.e., a trial of ultram, a referral to a self-help course offered by the Arthritis Foundation of Northeast Indiana, and a listing of swimming pools for aquatic therapy, as suggested by Dr. Behrendson*. Tr., p. 664. Apparently, then, Herrmann's treatment was too limited in part because she was not prescribed a specific medicine on a trial basis, or referred to a self-help course, or given a list of swimming pools she could go to for therapeutic exercise.

Even more problematic is the ALJ's discussion and assessment of the medical evidence regarding Herrmann's fine finger manipulative ability and gripping ability–another problem in ALJ Bernstein's decision that the Seventh Circuit specifically addressed and which also centers on Dr. Holton's medical opinion. The Seventh Circuit concluded that ALJ Bernstein's

assessment of this same evidence was fatally flawed, explaining as follows:

> Consider next the statement attributed by the administrative law judge to [Dr.] Holton that "manipulative abilities were normal." In fact Holton noted "grip strength" measurements of 31 pounds for [Herrmann's] right hand and 11 pounds for her left, which are well below the normal range for women of the applicant's age. . . . It's true that Holton reported that the applicant's "fine finger manipulative abilities appear normal." "'Fingering' involves picking, pinching, or otherwise working primarily with the fingers. It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion." Social Security Ruling 85-15:2. But Holton also opined that the applicant would have trouble "handling," a finding that is consistent with reduced grip strength (indeed, gripping is a form of handling) and is an essential manipulative activity in a great many jobs.

*Herrmann*, 772 F.3d at 1112. ALJ Katich, it appears, did not share the Seventh Circuit's concerns. She assessed the same evidence, noted Dr. Holton's opinion that Herrmann was disabled in part because of her gripping impairment, but then concluded as follows:

> Dr. Holton also stated the claimant's fine finger manipulative abilities appeared normal. While the claimant's grip strength in her right hand was 31 pounds and 11 pounds for her left, as noted above, muscle strength and tone in her upper extremities (hands/arms) was normal. Furthermore, Dr. Holton assessed the claimant was able to sort, handle, and use paper/files and lift/carry up to twenty pounds occasionally, which seems inconsistent with the assessment the claimant could only finger, handle, and reach on an occasional basis. Accordingly, the undersigned finds Dr. Holton's November 2008 examination findings are inconsistent with his opinion the claimant could not work an eight-hour day, sit/stand/walk on a sustained basis, or engage in more than occasional fingering, handling, and reaching.

Tr., p. 665. ALJ Katich gave little to no weight to Dr. Holton's opinion because: 1) she determined that it was "based on the claimant's statements," (which she deemed exaggerated); 2) Dr. Coates found during an examination conducted in December 2008 that Herrmann "did not appear in any pain distress, displayed good coordination, and presented as pleasant with good attention to her hygiene. Inspection of her bones, joints, and muscles was unremarkable."; and 3)

Dr. Holton's opinion that Herrmann was completely disabled due *in part* to her lack of grip strength was inconsistent with his findings regarding her fine finger manipulative ability. *Id*.[4] Katich's assessment and reasoning here, like Bernstein's, amounts to an "unreasoned brush off" and "confused rejection" not just of Dr. Holton's opinion, but "of the evidence offered by the other consulting physicians[.]" Whereas the Seventh Circuit concluded that ALJ Bernstein failed to consider relevant and material medical evidence by sweeping it to the side, ALJ Katich *did* consider it, but her reasons for rejecting the opinions of several physicians who support Herrmann's contention that she is completely disabled are every bit as confused and unconvincing.

### III. Plaintiff's Local Rule 7-3 brief.

#### A. Medical evidence.

Herrmann contends in her merits brief that ALJ Katich erred when she concluded that Dr. Dauscher's opinions and findings were not entitled to significant weight. Herrmann argues as follows:

> The ALJ failed to provide sound reasoning for rejecting Dr. Dauscher's medical opinions. The ALJ faulted Dr. Dauscher for failing to include in his treatment records objective medical findings that supported the "extreme" limitations that he proposed ([Tr., pp.] 647-50). The ALJ found that Dr. Dauscher's opinions were unsupported by his own treatment notes and therefore merited little weight. *Id.* The ALJ's finding, however, underscores her fundamental misunderstanding of fibromyalgia. "There are no laboratory tests for the presence or severity of fibromyalgia." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1995). *Accord Kennedy v. The Lily Extended Disability Plan*, 856 F.3d 1136, 1139 (7th Cir. 2017) (". . . it is error to demand laboratory data to credit the symptoms of

---

[4] Curiously, while ALJ Katich put great weight on Dr. Coates' report that Herrmann's exam was "unremarkable," she also notes that Dr. Coates nonetheless "continued to treat her with Vicodin, Ativan, and flexeril," a fact that evidences Herrmann's ongoing treatment for body pain.

fibromyalgia–the crucial symptoms, pain and fatigue, won't appear on laboratory
tests"); *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914,
919 (7th Cir. 2003) ("Pain often and in the case of fibromyalgia cannot be
detected by laboratory tests").

Plaintiff's Merits Brief (ECF 15), p. 14. As to the opinions of examining physicians Drs. Holton,

Ksionski and Bacchus, Herrmann contends that the ALJ erred by not according them greater

weight (controlling weight, even). Summarizing those doctors' opinions, Herrmann argues as

follows:

> The ALJ erred in weighing consulting physicians' Drs. Bacchus, Ksionski, and
> Holton's medical opinions. . . . Each of the consultative physicians who examined
> Ms. Herrmann provided ample support for their opinions. Dr. Bacchus concluded
> that Ms. Herrmann could perform part-time work[.] Dr. Bacchus, for example,
> observed that Ms. Herrmann requested that he turn off the florescent lighting in
> the examination room, that she got on and off of the examination table slowly,
> that she ambulated slowly and could barely walk on her heels or toes or tandemly,
> that she could not hop due to pain, that her straight leg raise test was positive, that
> her lumbar forward flexion was diminished, that her muscle and grip strength was
> diminished, that her range of motion in the knees and hips was diminished, and
> that she was mentally sluggish . . . . Dr. Ksionski supported his opinion that Ms.
> Herrmann suffered significant limitations in functionality based on his
> examination findings that reflected diminished lumbar flexion, extension, and
> lateral bending; shoulder and low back nodularities; pain upon motion; and
> diminished two-dimension and fingertip coordination. . . . Dr. Holton supported
> his opinion of Ms. Herrmann's diminished functional capacity by noting that Ms.
> Herrmann demonstrated halting features when she stood from a chair and when
> she got on and off of the examination table, stiff range of motion, paracervical and
> paralumbar tenderness, and significantly diminished grip strength. . . . The more
> support that a physician provides for his opinion, the greater weight that opinion
> merits. 20 C.F.R. § 416.927(c)(3). The ALJ did not explain why, given the
> evidence that each consultative examining physician cited in support of their
> opinions, greater, not less weight should have been accorded to the opinions.

*Id.*, pp. 15-18 (internal citations to record omitted).

Herrmann concludes this argument by noting that "[a]n ALJ is not a physician and is not

qualified or permitted to determine the significance of a particular medical finding. *Stage v.*

*Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). An ALJ is not permitted to substitute her opinion for that of a physician without relying on a contrary medical opinion or medical authority. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Here, the ALJ had no such medical opinion evidence or authority. The ALJ evaluated the evidence of these physicians' examinations and came to her own lay, speculative conclusion." *Id*., pp. 18-19.

All of the arguments Herrmann presses in her merits brief are valid and supported by authority. They are also unrefuted, of course, since the Commissioner did not respond to them. There is no need for the Court to discuss more examples to demonstrate that ALJ Katich's decision was not well-reasoned and must be reversed. As noted at the outset, even the Commissioner believes ALJ Katich got it wrong, at least as to her assessment of Dr. Holton's opinion, and argues that the whole mess should be sent back to the Agency until an ALJ gets this right. The Court, though, finds that ALJ Katich's decision is unsupported by the medical evidence, that it fails to address (let alone correct) the problems identified by the Seventh Circuit, and that it fails to present a "logical bridge" between the evidence and conclusions. For all of these reasons (and still more as discussed below), the Court concludes that remand for an award of benefits to Herrmann is the proper resolution of this case.

### B. Vocational expert's testimony.

Turning back to the issue of the VE's testimony, Herrmann argues, and the Court agrees, that ALJ Katich failed to explain how the vocational expert testimony she relied on was sufficient in light of the Seventh Circuit's decision. Herrmann challenges this portion of the ALJ's decision by arguing as follows:

The ALJ erred in relying on the VE's testimony in finding that there existed a

significant number of jobs in the national economy that Ms. Herrmann could
perform. The ALJ questioned the VE about the availability of jobs to a
hypothetical individual who retained Ms. Herrmann's RFC. The VE testified that
the hypothetical individual could perform the jobs of office helper, mail sorter,
and parking lot attendant. The VE reiterated that he relied only on his experience
in forming his opinion. The VE testified that he had no log or data that he could
provide to the ALJ to support his testimony. Based on the VE's testimony, the
ALJ concluded that Ms. Herrmann retained the RFC to perform the jobs of office
helper, mail sorter, and parking lot attendant. As in the present matter, where an
ALJ relies on a VE's testimony to find that there exists a substantial number of
jobs that a claimant can perform in the national economy, that testimony must be
reliable. *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2009). The Seventh
Circuit has held that a VE's testimony is not reliable where the VE bases such
testimony solely on his experience and provides no data or statistics to support
that testimony. *Hill v. Colvin*, 807 F.3d 862, 870 (7th Cir. 2015) (J. Posner,
concurring); *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014); *Browning
v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). As the VE based his testimony on
his ephemeral experience, Ms. Herrmann had no method to ascertain its veracity.

Plaintiff's Merits Brief, pp. 25-26 (internal citations to record omitted). The vocational expert in

this case testified that he based his findings and conclusions on *DOT* statistics and his "20 years

of experience of placing people into jobs, over 20 years experience doing job descriptions and

job analyses, and almost 20 years experience listening to people describe how they perform their

jobs in Social Security hearings." Tr., pp. 1089-90. When asked by Herrmann's attorney whether

he "rel[ied] on any labor market surveys or any kind of empirical data" to arrive at his estimation

of the number of jobs Herrmann *could* perform, the VE responded that "I don't have data

because it's based on my experience. And some of the best experiences to gain for how people

perform their jobs is listening to how people explain how they performed their job duties here in

Social Security hearings." *Id*. Herrmann's attorney then asked the VE if he "ke[pt] a list of

different *DOT* codes and claimant descriptions of jobs or anything like that so that there's some

sort of log or data that can be provided to the Court[,]" and the VE stated that he did not. Tr., p.

1090. The VE testified that based on *DOT* statistics and his 20 years of experience he determined that jobs Herrmann would be capable of performing existed in sufficient numbers in the national economy.

This is just what the VE did the last time around when ALJ Bernstein was presiding (although that VE also claimed to rely in part on "market surveys" to arrive at his conclusions) and the Seventh Circuit would have none of it. It's not that a VE's personal experience in the employment industry–writing job descriptions and placing people in jobs, for example–wouldn't be relevant and helpful to a VE who is trying to determine if there are jobs available that a claimant could perform. The problem, as the Seventh Circuit made clear, is that the VE did not explain "how past experience and 'knowledge' could enable him *to determine numbers of particular jobs*." *Herrmann*, 772 F.3d at 1113 (italics added). In this case, the VE likewise failed to explain how his past experience, coupled with "obsolete" numbers from the *DOT*, provided a basis for his statistical conclusions. In other words, this Court does "not know how the vocational expert in this case calculated the numbers to which he testified. Nothing in the record enables us to verify those numbers, which the administrative law judge accepted." *Id*. at 1114. The issue identified by the Seventh Circuit when it reversed ALJ Bernstein's decision still exists in this case because ALJ Katich offered nothing new or different that would enable this Court to "verify th[e] numbers" the VE calculated. For these reasons, the Court concludes that the ALJ erred when she accepted and relied on the VE testimony to support her conclusion that sufficient numbers of jobs existed that Herrmann would be capable of performing.

Herrmann presents another, more fundamental argument to challenge the ALJ's acceptance of the VE's statistical evidence. That is, the VE's evidence is irrelevant since it was

based on the assumption that Herrmann *was* capable of "a restricted range of light work," an assumption Herrmann claims is wrong from the get-go. At the hearing, ALJ Katich premised her questioning of the VE on her conclusion (or what became her conclusion) that Herrmann's residual functional capacity would permit her to perform certain light work. The ALJ presented the VE with the following hypothetical: "I want you to assume a hypothetical individual with claimant's education . . . no past work history . . . I want you to assume further this hypothetical individual can perform the full range of light exertional work activity except that the hypothetical individual can stand and/or walk for four hours in an eight-hour workday day and for no more than 30 minutes at one time. She can occasionally balance, stoop, kneel, crouch and crawl." Tr., p. 1086. On the basis of that hypothetical, the VE posited that the individual could perform the jobs of office helper, mail sorter, and parking lot attendant. Tr., p. 1088. But Herrmann contends all this is meaningless because the ALJ erred in determining Herrmann's RFC in the first place, rendering the VE's statistical evidence immaterial. At the hearing, Herrmann's attorney questioned the VE about this by presenting a different hypothetical:

> Q. [I]f we assume a different hypothetical question where the individual is limited to sedentary work and again with the same postural limitations that the Judge outlined in the first hypothetical, and . . . we add a limitation [that] the individual can frequently use bilateral upper extremities for feeling, but only occassional[ly] for reaching, handling and fingering, are there any jobs at the sedentary level that the individual could perform?

> A. There would not be, counselor.

Tr., p. 1089. Herrmann's lawyer then asked the VE whether "if we are looking at either the light jobs you cited or other jobs that might be available at the light or sedentary levels, would there be any work for an individual who cannot have any exposure to florescent lighting[?]" The VE

replied that "I would say that there would probably be no full-time competitive employment that would be available." Tr., p. 1091.

The Court agrees that the ALJ erred in determining Herrmann's RFC, given that it was based on errors she made when assessing the medical evidence (i.e., her RFC determination is not supported by substantial evidence, but rather, is based on her erroneous rejection of much of the medical evidence). And as Herrmann's attorney's question to the VE makes clear, if the ALJ's RFC is wrong then her hypothetical is wrong and the VE's conclusion that jobs exist that Herrmann could perform is also wrong. For these reasons, the Court concludes that the ALJ's acceptance of the VE's testimony was error.

### C. Waiver issue.

As the Court mentioned many pages ago, Herrmann argues that the Commissioner's decision not to file a response to her merits brief "creates a negative inference, waiving defense of the issue[s]." Plaintiff's Response, p. 2 (citing *Kelly v. Colvin* 2015 WL 4730119, *5 (N.D. Ill. Aug. 10, 2015)). Herrmann points the court to cases holding "that the Commissioner's failure to address one of a claimant's argument amounts to waiver." *Id.* (citing *Dogan v. Astrue*, 751 F.Supp.2d 1029, 1042 (N.D. Ind. June 3, 2010) and *Pino v. Berryhill*, No. 2:16-CV-110 (N.D. Ind. Sept. 6, 2017)). As Herrmann points out, in *Pino* this Court (Magistrate Judge Paul Cherry) noted that "'[i]f the Commissioner does not respond to an argument raised in Plaintiff's opening brief, the Commissioner's silence constitutes waiver of the issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ('Failure to respond to an argument . . . results in waiver.') (citing *U.S. v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008); *Williams v. REP Corp.*, 302 F.3d 660, 667 (7th Cir. 2002))." *Id.* (quoting *Pino*).

As this Court noted in *Dogan*, this waiver issue is well established. *See Dogan v. Astrue*, 751 F.Supp.2d at 1042 (citing *Lechner v. Barnhart*, 321 F.Supp.2d 1015, 1030 (E.D.Wis. 2004) (finding the Commissioner failed to specifically address plaintiff's credibility argument in her brief, thus waiving her right to do so); *Stemper v. Barnhart*, 2005 WL 857033, *5 (W.D.Wis. April 14, 2005) (remanding based on the Commissioner's failure to address one of plaintiff's arguments in her brief and the ALJ's failure to provide a sufficient analysis on that argument); *Embry v. Barnhart*, 2003 WL 21704425, *10 (N.D.Ill. July 18, 2003) (finding that the ALJ failed to explain why he gave greater weight to a non-examining consultant's report over an examining physician's report and reversing, noting the Commissioner failed to address the argument in her brief).

In the present case, not only did the Commissioner choose not to file a response to Herrmann's merits brief, she also chose not to file a reply brief to Herrmann's response in opposition to the motion for remand. In other words, the Commissioner waived any arguments she may have been able to raise in response to Herrmann's complaint by not filing a response brief, and also waived any argument about the issue of waiver itself by not filing a reply brief. The Commissioner made a calculated choice to proceed this way, which was her prerogative; but it left unchallenged all of Herrmann's arguments urging reversal of the ALJ's decision for an award of benefits–and those arguments are compelling.

### IV. "Pinball syndrome."

At the beginning of this opinion the Court noted that many social security cases take years to reach conclusion. But just because a case has been litigated for many years is not a reason, at least by itself, to grant or deny benefits. That said, other courts have taken notice–and action–in

social security cases that, like this one, have been "bouncing back and forth like a pinball" for years. In *Phillips v. Colvin*, 171 F.Supp.3d 819 (E.D. Wis. 2016), the district court remanded a case with instructions to award damages to the claimant. The court noted that the case had been pending for 14 years (like this one), that three ALJs had conducted reviews and issued decisions unfavorable to the claimant (like this one), and that the case had bounced back and forth between the agency and the federal court several times (like this one). The court concluded that the ALJ erred in relying on vocational expert testimony and that the error warranted remand. Judge Clevert, Jr., decided that remand for an award of benefits was warranted, rather than remand for a fourth administrative hearing and review. He summarized his decision as follows:

> The ALJ's decision must be reversed thereby raising the question of the appropriate remedy. Phillips seeks an outright award of benefits under *Worzalla v. Barnhart*, 311 F.Supp.2d 782 (E.D.Wis. 2004). In response, the Commissioner argues that a remand for another hearing is more appropriate.
> In *Worzalla*, District Judge Lynn Adelman found that an outright award of benefits was appropriate (1) if the record overwhelming supports a finding of disability, or (2) if "the delay involved in repeated remands has become unconscionable, or the agency has displayed obduracy in complying with the law as set down by the court," 311 F.Supp.2d at 800. *Wilder v. Apfel*, 153 F.3d 799 (7th Cir. 1998), also supports the second basis, known as the "obduracy exception," for an award. Both cases involved drawn-out proceedings at the Social Security Administration or the agency's refusal on remand to follow court directions.[5]
>
> . . . [I]t strains reason to require a fourth opportunity, after fourteen years of this case bouncing back and forth between the agency and the district court like a pinball, for the Commissioner to determine Phillips's claim fully and correctly.

*Phillips v. Colvin*, 171 F.Supp.3d at 829-30. In *Israel v. Colvin* the Seventh Circuit reluctantly

---

[5] To be clear, Herrmann does *not* allege that the Commissioner was obdurate nor does the Court believe that to be the case. However, after 14 years and several attempts by ALJs and the federal courts to resolve this case, the issue of unreasonable or unconscionable delay is certainly a valid consideration even when that delay was not the result of obduracy or even unreasonableness on the part of either side.

affirmed the district court's remand of the case for a *fourth* hearing and review by an ALJ, and

lamented the fact that the case had been pending for nearly a decade. The Court wrote as follows:

> Israel's patience has understandably grown thin. We agree that it should not take
> nine years to determine whether a claimant's impairments prevent him from
> engaging in full-time employment, especially a claimant who appears to have a
> well-documented and well-supported claim for disability. Israel believes he is
> entitled to a directed award of benefits at this stage, citing *Wilder v. Apfel*, 153
> F.3d 799 (7th Cir. 1998). But the record in this case is not as severely lopsided as
> it was in *Wilder*, and we do not perceive the same level of obduracy on the part of
> the Agency. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir.
> 2005) ("Another remand for further proceedings was unnecessary in *Wilder*
> because after two evidentiary hearings, the ALJ had no reasonable grounds to
> reject the claimant's claim."). "It remains true that an award of benefits is
> appropriate only if all factual issues have been resolved and the record supports a
> finding of disability." *Briscoe*, 425 F.3d at 356. If the case returns to this court
> with the Agency seeking a fifth hearing, our analysis may change. . . . We strongly
> encourage the Agency to expedite the proceedings in order to resolve Israel's
> claims once and for all.

*Israel v. Colvin*, 840 F.3d 432, 441-42 (7th Cir. 2016).

Like *Phillips* and *Israel*, this case also suffers from pinball syndrome and demands

closure. This Court has reviewed the record in this case and made an earnest attempt to do so by

taking a "30,000-foot view" of the evidence, much like the Seventh Circuit did when it

summarized the medical opinion evidence of Herrmann's impairments. The Court concludes that

the medical evidence in this case supports a determination that Herrmann was disabled before

she turned 55 and therefore is entitled to an award of benefits for the period in question.

To reiterate, Dr. Dauscher, Herrmann's treating physician, and consultative examining

physicians Bacchus, Holton and Ksionski, all opined that Herrmann suffered from fibromyalgia

(and many concomitant impairments including chronic pain, fatigue, and problems with gripping

and handling), photophobia, and degenerative spinal disk disease. The consensus opinion of

those physicians was that Herrmann was severely limited or altogether prevented from performing even light sedentary work due to her impairments. The ALJ, however, concluded that Herrmann was capable of performing certain light duty jobs and therefore was not disabled during the period in question. As the Seventh Circuit pointed out, though, "'[l]ight work' is defined by the Social Security Administration as work that 'involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.'" *Herrmann*, 772 F.3d at 1111 (quoting 20 C.F.R. § 404.1567). As the Seventh Circuit observed, "[t]his is a pretty precise description of the type of work that, according to the findings by the doctors regarding [Herrmann's] physical limitations, she *can't* perform." *Id*. (italics in original).

Is there medical evidence in the record that arguably contradicts or is inconsistent with these physicians' conclusions? Absolutely–and both ALJ Bernstein and ALJ Katich relied on that contrary evidence (such as the lack of "treatment notes" in some physicians' opinions), along with their findings that Herrmann's testimony regarding the severity of her impairments was not completely credible, to support their ultimate conclusions that Herrmann's collection of impairments did not render her totally disabled. The Seventh Circuit found fatal errors in ALJ

Bernstein's decision. This Court concludes that ALJ Katich's decision must also be reversed because it did not address, let alone correct, the errors identified by the appellate court. Finally, Herrmann's arguments in support of her Complaint are well founded and uncontested. Accordingly, this case will be remanded to the Commissioner for the granting of benefits.

## CONCLUSION

For all of the reasons set forth above, the decision of the Commissioner is REVERSED and the Court REMANDS this case to the Social Security Administration for an award of disability benefits to the Plaintiff for the period from June 9, 2003, to September 6, 2010.

Dated: December 20, 2017.

  /s/   William C. Lee  
William C. Lee, Judge  
United States District Court  
Northern District of Indiana